**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**Springfield Division**

| | |
|---|---|
| ANDREW ZIMMERMANN and KELLY ZIMMERMANN, as class representatives for the certified ZIMMERMANN ACTION CLASSES,<br><br>                          Plaintiffs,<br><br>        v.<br><br>ARTHUR WOBIG, AVW, INC., DOMINIC SALZONE, GTG ENTERPRISES, LTD., KURT MEYER and VON MEYER, LTD.,<br><br>                  Defendants. | Civil Action No. |

## COMPLAINT TO ENFORCE CONSTRUCTIVE TRUST

Plaintiffs Andrew Zimmermann and Kelly Zimmermann, as certified class representatives for the certified classes in the action pending in this Court styled *Zimmerman v. Cambridge Credit Counseling Corp.*, Case No. 03-cv-30261-MAP (also cited as *Zimmerman (sic) v. Cambridge Credit Counseling Corp.*) (the "*Zimmerman* Action") (collectively, "Plaintiffs") (the "*Zimmerman* Action"), for their complaint against defendants Arthur Wobig ("Wobig"), AVW, Inc., Dominic Salzone ("Salzone"), GTG Enterprises, Ltd., Kurt Meyer ("Meyer") and Von Meyer, Ltd. (collectively "Defendants), upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, allege as follows:

## NATURE OF THE ACTION

1.     This action is related to the *Zimmerman* Action pending before the Honorable Michael A. Ponsor.

2.     On December 6, 2007, this Court certified a nationwide class action in the *Zimmerman* Action beginning on November 3, 1998.

3.     This Court in the *Zimmerman* Action subsequently awarded summary judgment to the certified classes and entered judgments in favor of the certified classes in the amounts of $259,085,983 and $256,527,000.

4.     On March 18, 2009, this Court's final Order in the *Zimmerman* Action adjudicated the existence of a constructive trust (the "Constructive Trust") for the full amount of the judgment awards due and owing to the certified classes.

5.     The Defendants in this action were each paid monies deriving from and traceable to the Constructive Trust for which no services were rendered or that were in excess of the fair value of services provided by Wobig, Salzone and/or Meyer as officers and/or employees of the *Zimmerman* Action defendants, which monies have at all times been the property of the

2

Constructive Trust beneficiaries, namely the class certified in the Zimmerman Action. This action seeks the return of any and all Constructive Trust proceeds paid to Defendants for the benefit of the class certified in the Zimmerman Action.

## JURISDICTION AND VENUE

6.    This Complaint is filed and these proceedings are instituted under federal statutes over which this Court has federal question subject matter jurisdiction and under state statutes over which this Court has supplemental subject matter jurisdiction.

7.    The jurisdiction of this Court is based upon 28 U.S.C. §1331 and 15 U.S.C. §1679g.

8.    The subject matter of this Court is further based upon the March 18, 2009 Judgment Order Regarding Defendants John and Richard Puccio in the *Zimmerman* Action (Document No. 420), wherein the Court "expressly reserv[ed] jurisdiction" over matters related to the *Zimmerman* Action and litigation concerning the judgments entered in the *Zimmerman* Action for the benefit of the certified class.

9.    The subject matter of this Court is further based upon the All Writs Act, 28 U.S.C. §1651, and 28 U.S.C. §3202, which provide the federal courts with jurisdiction to issue writs in enforcement of its judgments.

10.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

11.    This Court possesses personal jurisdiction over each Defendant based on each Defendant's residence, presence, transaction of business and contacts within the United States, Massachusetts and/or this District.

12.    Venue is proper within this District under 28 U.S.C. §1391. A substantial part of the events or omissions giving rise to the claims and injury alleged occurred in this

3

District.

## THE PARTIES

*Plaintiffs*

13.     Plaintiffs are the certified class representatives and members of the classes certified by this Court in the *Zimmerman* Action, which certified classes are the beneficiaries of a Constructive Trust established by this Court in its *Zimmerman* Action judgments.

*Defendants*

14.     Arthur Wobig succeeded John Puccio as the President of Cambridge Brighton Budget Planning Corp. ("CBBPC"), and prior to that was the chief operating officer of CBBPC, until such time as the court-appointed receiver in the *Zimmerman* Action assumed control of CBBPC and terminated Arthur Wobig's employment.  During the certified class periods in the *Zimmerman* Action, Arthur Wobig was also an officer and employee of multiple other Zimmerman Action defendants.  During the term of the Constructive Trust, Arthur Wobig was paid monies deriving from and traceable to the Constructive Trust, which monies have at all times been the property of the Constructive Trust beneficiaries, namely the certified classes in the *Zimmerman* Action.   A partial list of the monies paid to Arthur Wobig individually, in addition to his salary, for which no services were rendered or that were in excess of the fair value of services provided by Wobig as an employee of the *Zimmerman* Action defendants, that derived from and are traceable to the Constructive Trust includes the following payments:

(a).     $500,000 on December 14, 2004, from the joint checking account of John Puccio and Cambridge Credit Corporation ("CCC");

4

(b).   $23,120 on March 1, 2004, from a Richard Puccio checking account;

(c).   $100,000 on July 29, 2005, from Enfield Realty;

(d).   $50,000 on August 31, 2005, from the joint checking account of John Puccio and CCC;

(e).   $20,000 on September 26, 2006, from JRJ Associates;

(f).   $20,000 on April 27, 2007, in a check from John Puccio;

(g).   $55,894.53 from Brighton Debt Management Services, Ltd. ("BDMS") in 2004;

(h).   $14,859.35 from Brighton Credit Corp. of Massachusetts ("BCCM") in 2003;

(i).   $36,192.23 from BCCM in 2002;

(j).   $60,976.75 from BCCM in 2001; and

(k).   $14,207.45 from BCCM in 2000.

15.   Arthur Wobig was also the sole shareholder, sole owner, sole employee and alter ego of AVW, Inc. ("AVW"), a New York corporation. During the term of the Constructive Trust, AVW was paid monies deriving from and traceable to the Constructive Trust, which monies have at all times been the property of the Constructive Trust beneficiaries, namely the certified classes in the *Zimmerman* Action. A partial list of the monies paid to AVW, for which no services were rendered or that were in excess of the fair value of services provided by Wobig as an employee of the *Zimmerman* Action defendants, that derived from and are traceable to the Constructive Trust includes the following payments:

(a).   $15,960.26 from BDMS in 2004;

(b).   421,673.31 from BCCM in 2003;

(c).   $88,410.16 from BCCM in 2002;

(d).    $91,869.44 from BCCM in 2001; and

(e).    $66,366.63 from BCCM in 2000.

16.    Dominic Salzone was a former officer and employee of multiple *Zimmerman* Action defendants.  He is also the sole shareholder, sole owner, sole employee and alter ego of GTG Enterprises, Ltd. ("GTG"), a Massachusetts or New York corporation.  During the term of the Constructive Trust, GTG was paid monies deriving from and traceable to the Constructive Trust, which monies are the property of the Constructive Trust beneficiaries, namely the certified classes in the *Zimmerman* Action.   A partial list of the monies paid to GTG, for which no services were rendered or that were in excess of the fair value of services provided by Salzone as an employee of the *Zimmerman* Action defendants, that derived from and are traceable to the Constructive Trust includes the following payments:

(a).    $47,641.07 from CCCC in 1999;

(b).    $148,847.79 from CCCC in 2000;

(c).    $259,211.79 from CCCC in 2001;

(d).    $125,065.44 from CCCC in 2002;

(e).    $220,000 from CCCC in 2003;

(f).    $120,000 from BDMS in 2004; and

(f).    $11,260 from BDMS in 2005.

17.    Kurt Meyer is a former officer and employee of multiple *Zimmerman* Action defendants.  He is also the sole shareholder, sole owner, sole employee and alter ego of Von Meyer, Ltd. ("Von Meyer"), a New York corporation. During the term of the Constructive Trust, Von Meyer was paid monies deriving from and traceable to the Constructive Trust, which

monies have at all times been the property of the Constructive Trust beneficiaries, namely the certified classes in the *Zimmerman* Action.  A partial list of the monies paid to Von Meyer, for which no services were rendered or that were in excess of the fair value of services provided by Meyer as an employee of the *Zimmerman* Action defendants, that derived from and are traceable to the Constructive Trust includes the following payments:

    (a).    $71,745.47 from Cambridge Credit Counseling Corp. ("CCCC") in 1999;

    (b).    $175,000 from CCCC in 2000;

    (c).    $192,000 from CCCC in 2001;

    (d).    $92,000 to $95,500 from CCCC in 2002;

    (e).    $164,000 to $164,500 from CCCC in 2003;

    (f).    $14,000 from Brighton Credit Management Corp. ("BCMC") in 2004;

    (g).    $43,500 from BCMC in 2003; and

    (h).    $24,500 from BCMC in 2002.

## FACTUAL ALLEGATIONS

18.    The *Zimmerman* Action was filed in this Court on November 3, 2003.

19.    On November 25, 2003, a related action to the *Zimmerman* Action seeking class certification of a substantially similar class of consumers was filed in the United States District Court for the Eastern District of New York.  That action was styled, *Limpert v. Cambridge Credit Counseling Corp.*, Case No. 03-cv-5986-TCP-WDW (the "*Limpert* Action").  The *Zimmerman* and *Limpert* Actions were litigated in a coordinated fashion.

20.    This Court granted Plaintiffs' motion for class certification in the *Zimmerman* Action on December 6, 2007, therein certifying the following classes:

(a).    A sub-class of all individuals who entered into a contract for a debt management plan with Cambridge Credit Counseling Corp. [CCCC] from November 3, 1998 through September 18, 2006 ("Sub-Class 1"); [and]

(b).    A class of all individuals who at ant time after November 3, 1998 through the present paid, directly or directly, any money or other valuable consideration to Brighton Credit Corp. of Massachusetts, Brighton Debt Management Services, Ltd., First Consumer[] Credit Management Corp. for any service related to the individual's DMP ("Class 1").

*Zimmerman* Action Document Nos. 230, 231. Class 1 and Class 2 certified by Judge Ponsor are collectively referred to herein as the "Classes."

21.    On January 7, 2008, this Court in the *Zimmerman* Action granted Plaintiffs' and the certified classes' motion for summary judgment under the Credit Repair Organizations Act and M.G.L. c. 93A.   *Zimmerman* Document No. 233, *Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F. Supp. 2d 254 (D. Mass. 2008) (Ponsor, J.).

22.     That summary judgment decision determined that each of the defendants were credit repair organizations or CROA "persons" based upon their collective activities in controlling, marketing, soliciting, selling, servicing and/or administering DMPs or profiting from the ownership and control of the *Zimmerman* Action Defendants who engaged in the unlawful conduct.

23.    The summary judgment decision held that the credit repair organizations and/or CROA persons were each liable to Plaintiffs and the classes for failing to comply with the CROA disclosure provisions, the CROA right to cancel provisions, the CROA prohibition on

collecting advance fees and the CROA prohibition on making deceptive and misleading statements.

24.     This Court's summary judgment decision stated as follows:

> Between its creation and December 31, 2004, CCCC received $185,736,640 of income from customers. Clients' initial up-front payments accounted for $70,494,408 of that amount, with the rest coming from monthly fees. From November 3, 1998 to December 31, 2004, BCMC earned $63,057,703 from customer payments and CBBPC earned $10,291,640.

*Zimmerman*, 529 F. Supp. 2d at 262.

25.     The *Zimmerman* Action summary judgment decision further held that the defendants violated the Massachusetts Consumer Protection Act, M.G.L. c. 93A, for engaging in unfair and deceptive acts and practices.  *See Zimmerman*, 529 F. Supp. 2d at 280-81.

26.     CCCC, CBBPC and the other corporate defendants were the alter egos of John Puccio and Richard Puccio, as held by this Court, and all monies paid to or from any the *Zimmerman* Action defendants were for the benefit of John and Richard Puccio.  *See Zimmerman*, 529 F. Supp. 2d at 271-72, 280.

27.     On December 2, 2008, this Court entered judgment against the entity defendants in the *Zimmerman* Action, jointly and severally, in the amount of $259,085,983.00.   In its ORDER REGARDING PLAINTIFFS['] *EX PARTE* MOTION FOR DEFAULT JUDGMENT AGAINST ALL UNREPRESENTED ENTITY DEFENDANTS entered that same day, this Court stated:

> The amount of judgment against the defaulted entities listed above is $259,085,983.00. The court has previously entered judgment on liability based upon its allowance of Plaintiff's Motion for Summary Judgment. See Dkt. No. 33. The amount of money that the court found was paid by consumers directly or indirectly to the defendants now defaulted is virtually uncontested. *See* Dkt. No.

233 at 16 and 15 U.S.C. §1679(g)(1)(B). This amount of judgment is without any multiplier, which plaintiffs would very possibly be entitled to under the pertinent statutes. The very remote likelihood, as a practical matter, that the defaulted entities will be capable of paying a judgment remotely equaling the $259,085,983.00 sum ordered by the court, however, makes consideration of any enhanced judgment unnecessary.

*Zimmerman* Action Document No. 313 at 2-3.

28.    On March 18, 2009, this Court entered judgment in the *Zimmerman* Action against defendants John Puccio and Richard Puccio, Esq., "jointly and severally with one another and all other defendants pursuant to this Court's prior judgment," in the amount of $256,527,000, plus interest and costs.   *Zimmerman* Action Document No. 420.   The March 18, 2009 JUDGMENT ORDER REGARDING DEFENDANTS JOHN AND RICHARD PUCCIO further imposed a constructive trust for the full amount of the judgments entered in the *Zimmerman* Action for the benefit of the certified class:

> Pursuant to the Court's inherent equitable powers and the equitable powers granted by M.G.L. Chapter 93A, §11, the Court imposes the following equitable and declaratory relief.  The Court finds that because John Puccio and Richard Puccio are or were agents or representatives of such CSOs within the meaning of M.G.L. Chapter 93, §68B, and were persons within the meaning of 15 U.S.C section 1679b, who engaged in a pervasively deceptive course of business involving fraudulent misrepresentations to consumers by former CCCC, and by other defendant organizations during the class period, all for the purpose of receiving personal benefit from the defendant entities and from former defendant CCCC, grounds exist for the imposition of other and further equitable relief. Therefore, the Court does hereby ADJUDGE ORDER AND DECREE the imposition of a constructive trust over all fees that consumers paid to the current or former defendant entities, including Cambridge Credit Counseling Corp.  Such trust shall include without limitation all monies or benefits in kind, whether salary, distributions, or other payments of money, satisfaction of accounts or charges for services or purchases of real or personal property:
>
> > a.    traceable as payment from any defendant or former defendant to or for the benefit of John or Richard Puccio;

b.      traceable as payment from any defendant or former defendant to or for the benefit of members of the families, friends or associates John Puccio and/or Richard Puccio; and/or;

c.      traceable as payment from any defendant or former defendant to or for the benefit of any manager or employee of any defendant or former defendant that is in excess of the fair value of such person's services rendered.

29.     After the filing of the *Zimmerman* Action, certain of the *Zimmerman* Action defendants were sued or investigated by various state Attorneys General and federal government agencies. Among the states or commonwealths that filed lawsuits against the *Zimmerman* and Limpert action defendants were Massachusetts, Illinois and North Carolina.

30.     After the filing of the *Zimmerman* Action, the IRS issued an audit report recommending revocation of the federal tax exempt status of CCCC, based on conduct that was the subject of the *Zimmerman* and Limpert Actions, and the state Attorney General lawsuits and investigations.

31.     Although CBBPC had sought to obtain federal tax-exempt status, CBBPC subsequently abandoned its efforts to gain federal tax-exempt status.

32.     From the commencement of the *Zimmerman* and Limpert Actions, the plaintiffs in those actions sought the creation of a constructive trust for the benefit of the injured classes of consumers.

33.     Each of the Defendants was paid money deriving from and belonging to the Constructive Trust. Those trust monies must be returned to the Constructive Trust beneficiaries, namely the certified class.

34.     In  deposition  testimony  provided  in  the  *Zimmerman*  Action,  Arthur  Wobig

testified  that  he  was  the  sole  owner  of  AVW  and  that  AVW  received  all  its  revenues  from

related-party  transactions  with  the  *Zimmerman*  Action  defendants  and  that  payments  to  AVW

were  in  excess  of  the  fair  value  paid  to  Wobig  for  his  services  as  an  employee  of  the  *Zimmerman*

Action  defendants:

> Q.     Do  you  remember  which  organization  that  was  with  when  you  became
>        director  of  operations?
> A.     First  Consumer  and  it  was  on  or  about  the  time  of  the  New  York
>        operations  separation  from  the  Massachusetts  operation.
> Q.     That  was  in  what  year?
> A.     First  quarter  2005.
>
> ***
>
> Q.     First,  the  purpose  of  the  question  is  to  understand  which  organizations  on
>        this  list  you  provided  any  services  for?
> A.     Provided  services  for?
> Q.     You  did  any  work  for  whether  they  cut  you  the  paycheck  or  whether  you
>        were  just  performing  a  function  for  that  organization?
> A.     If  I'm  not  sure?
> Q.     Put  a  question  mark.   You  put  a  question  mark  by  Cambridge  Credit
>        Corp.;  is  that  correct?
> A.     Yes,  just  because  I  primarily  worked  for  Brighton  Credit  Corp.  and  I'm
>        not  sure  whether  I  did  anything  for  Cambridge.
> Q.     Just  put  a  check  if  you  know  you  did.   That's  Brighton  Credit  Corp.
>        Checked  off  Cypress.   Checked  off  Brighton  Credit  of  Mass.   Checked  off
>        Cambridge  Consumer  Credit  Index,  Inc.   Which  one  did  you  just  check
>        off?
> A.     Class  N'  Style  Travel  &  Limousine.
> Q.     Did  you  just  check  another  one?
> A.     RJP.
> Q.     Okay?
> A.     Southfork  Asset,  Brighton  Debt  Management  Services,  Debt  Relief
>        Clearing  House,  Brighton  Credit  Management  Corp.,  AVW,  Inc.
> Q.     Tell  me  briefly  about  AVW,  Inc.,  what  organization  is  that?
> A.     That  was  a  corporation  formed  by  me.
> Q.     For  what  purpose?
> A.     Consulting  services  to  the  business.

Q.      To the businesses you just checked off?
A.      Yes.

***

Q.      Briefly to the best of your knowledge I'd like you to identify the of
        services that these vendors provided to the organizations within the listing
        of counseling companies that you just referred to as the Cambridge family
        of businesses.  Let's begin with your own, AVW, Inc., what services did it
        provide?
A.      Management consulting.
Q.      Can you be more specific, describe a project or projects that it performed
        and a time frame?
A.      I don't remember.
Q.      Do you know how much AVW, Inc. invoiced the Cambridge  family of
        businesses over time?
A.      I don't remember.  I'd have to go back to my records.
Q.      Be more than $20,000?
A.      Over the course of the relationship AVW had with the family of
        companies I would say yes.  Maybe you could tell me.

***

Q.      Let's just to sort of assess its accuracy, if you wouldn't mind looking
        through these pages for references to yourself or to AVW, for example, I
        note on the second page there is a vendor named Arthur Wobig and a
        payment of $55,894.53. Are you familiar with that transaction?
A.      No.
Q.      Would it be referring to AVW instead of yourself or did you ever provide
        services to the organization other than in your capacity as an employee or
        as the owner operator of AVW, Inc.?
A.      No.
Q.      Do you have any idea what that $55,894.53 relates to?
A.      I'm speculating so no, I don't.

***

Q.      Then on the next page there is a payment in the amount of $15,960.26 to
        AVW, Inc. in the year 2004. Do you recall that payment or payments that
        added up to that amount?
A.      Yes, somewhat.
Q.      What would that service have been?
A.      That was the consulting services I was providing to Brighton Debt
        Management Services.

13

Q.    What services, what consulting did you perform that year?
A.    I don't recall in that particular time frame exactly what I was doing.

***

Q.    Do you recall who would ask you to provide the services of AVW, Inc., who gave you your directions or requested that AVW, Inc. provide services?
A.    John Puccio.
Q.    Was that done under a contract in writing?
A.    No.
Q.    Would you submit invoices?
A.    No.
Q.    Would you keep time?
A.    No.
Q.    How did John know how much to pay you?
A.    He decided.

35.    Separate and apart from Constructive Trust monies paid to AWV and Wobig in a non-employee capacity, Wobig was paid salaries by the *Zimmerman* Action defendants. Interrogatory responses provided by the defendants in the *Limpert* Action disclose some of the salaries paid to Wobig by the various *Zimmerman* Action defendants beginning in 1999.

36.    In deposition testimony provided in the *Zimmerman* Action, Dominic Salzone testified that he was the sole owner and employee of GTG, that GTG received all its revenues from related-party transactions with the *Zimmerman* Action defendants and that payments to GTG were in excess of the fair value paid to Salzone for his services as an employee of the *Zimmerman* Action defendants:

Q.    The next entry is for a GTG Enterprises.  Do you know who owns that company or owned that company?
A.    Yes.
Q.    Who?
A.    Myself.
Q.    Did GTG Enterprises employ anyone other than you?
A.    No.

14

***

| | |
|---|---|
| Q. | Did you ever have any other clients other than Cambridge Credit Counseling Corporation? |
| A. | Yes. |
| Q. | Who? |
| A. | Brighton Debt Management Services, Brighton Credit Corp. of Massachusetts. |

***

| | |
|---|---|
| Q. | How did GTG and CCCC determine how much GTG was to be paid for its services? |
| A. | It was determined by John Puccio. |
| Q. | Was there ever a written contract? |
| A. | I don't recall. |
| Q. | I take it you don't recall signing one? |
| A. | Right. |
| Q. | I'm now building on what your counsel [Brian Davis, Esq.] said a moment ago.  Sometime this morning I asked you the circumstances surrounding your formation of the company.  Do I understand correctly that you said you were told to form GTG Enterprises by John Puccio and Mike Gazzani? |
| A. | Correct. |
| Q. | What did they tell you at the time of the formation of the company in that regard? |
| A. | They were to pay me, my corporation, a salary over and above my normal position with Cambridge Credit Counseling Corp. or any of the other entities. |
| Q. | Did they tell you why you should form the separate corporation? |
| A. | No, not why.  It was so they could pay me over and beyond my regular salary. |
| Q. | Was it John Puccio who told you that or Mike Gazzani who told you that? |
| A. | I don't recall which one. |

37.     Separate and apart from Constructive Trust monies paid to GTG, Salzone was paid salaries by the *Zimmerman* Action defendants.  Interrogatory responses provided by the defendants in the *Limpert* Action disclose some of the salaries paid to Salzone by the various *Zimmerman* Action defendants beginning in 1997.

15

38.     In deposition testimony provided in the *Zimmerman* Action, Kurt Meyer testified that he was the sole owner and employee of Von Meyer, that Von Meyer received all its revenues from related-party transactions with the *Zimmerman* Action defendants and that payments to Von Meyer were in excess of the fair value paid to Meyer for his services as an employee of the *Zimmerman* Action defendants beginning in 1998.

Q.     You owned and operated I believe a company called Von Meyer; is that correct?
A.     Yes.
Q.     Von Meyer Limited?
A.     Yes.
Q.     What was its business?
A.     Management consulting.
Q.     Were you its product, were you the manager who provided the consulting services?
A.     Yes.
Q.     Did Von Meyer have any clients other than Cambridge or Cambridge Brighton or Brighton Credit Management?
A.     No, just Cambridge.

***

Q.     Did you send invoices for services?
A.     No.
Q.     Did you keep time records?
A.     No.
Q.     Is it true that between August 10, 1998 and December 31, 2002 Cambridge paid Von Meyer $779,200?
A.     I'm not sure.

***

Q.     At the time you in your capacity as an employee of Von Meyer Limited were providing services to the Cambridge companies were you also an employee?
A.     Could you clarify?
Q.     You had indicated that you owned and operated Von Meyer and provided consulting services, correct?
A.     Yes.

16

Q.    And you received a fee for that?

A.    Yes.

Q.    At the same time you were also employed by Cambridge Brighton and received salaries from them as well?

A.    Yes, but I'm not sure of which companies, I don't recall.

Q.    You don't recall which ones you were employed at that time -- at the time?

A.    At the time, yeah.  I know Cambridge Credit Counseling, but I can't recall --

Q.    Do you recall which company or companies Von Meyer did services for?

A.    The family.

Q.    The entire family?

A.    Yes.

Q.    The payments to Von Meyer, did they come from one or more of the companies?

A.    I don't recall.

39.    Separate and apart from Constructive Trust monies paid to Von Meyer, Meyer was paid salaries by the *Zimmerman* Action defendants.  Interrogatory responses provided by the defendants in the *Limpert* Action disclose some of the salaries paid to Meyer by the various *Zimmerman* Action defendants beginning in 1997.

40.    Audited financial statements prepared for CCCC acknowledge that payments made to GTG and Von Meyer were related-party transactions and that Salzone and Meyer were not only the principals of those companies, but simultaneously "key management employees of the Company."

17

## COUNT I

**RECOVERY OF CONSTRUCTIVE TRUST PROCEEDS**

**(Against All Defendants)**

41.     Plaintiffs repeat and reallege Paragraphs 1 through 40 as though set forth herein.

42.     This Court in the *Zimmerman* Action imposed the Constructive Trust for the benefit of the certified classes in the *Zimmerman* Action.  The Plaintiffs are the certified class representatives for those certified classes.

43.     The Constructive Trust was adjudicated and created on March 18, 2009.

44.     Each Defendant has been paid monies derived from and traceable to the Constructive Trust and its beneficiaries, namely the certified *Zimmerman* Action classes.

45.      All monies paid to Arthur Wobig, AVW, Dominic Salzone, GTG, Kurt Meyer and Von Meyer are traceable as payments from the *Zimmerman* Action defendants for the benefit of, respectively, Arthur Wobig, Dominic Salzone and Kurt Meyer, each of whom was a manager and/or employee of the *Zimmerman* Action defendants, and which payments were in excess of the fair value of such person's services.

46.     To the extent any Defendant has distributed to any other person monies paid to it from or for the benefit of the *Zimmerman* Action defendants and derived from and are traceable to the Constructive Trust, those distributions are traceable and the property of the Constructive Trust created by this Court in the *Zimmerman* Action.

47.     No Defendant has returned or refunded any portion of Constructive Trust proceeds in its possession, or in the possession of others to whom any Defendant distributed Constructive Trust proceeds.

18

48.     Plaintiffs, as the certified class representatives for the certified *Zimmerman* Action classes, seek the return and refund of all Constructive Trust proceeds paid to or in the possession of all Defendants, with interest allowed by law.

### JURY DEMAND

The certified Zimmerman Action class representatives and classes demand a trial by jury on all issues so triable.

Dated: November 10, 2009

Respectfully submitted,

 **/s/ Stephen G. Hennessy**
STEPHEN G. HENNESSY, ESQ.
(BBO No. 549914)
P.O. Box 477
Milton, MA 02816
Telephone: 617-696-1600
Facsimile: 617-696-1667

MORRIS POLICH & PURDY LLP
David Vendler (BBO 552811)
1055 West Seventh Street, 24th Floor
Los Angeles, California 90017
Telephone:  213-891-9100
Facsimile:   213-488-1178

MICHIE HAMLETT LOWRY RASMUSSEN
   & TWEEL PLLC
Garrett M. Smith
500 Court Square, Suite 300, P.O. Box 298
Charlottesville, VA  22902-0298
Telephone:  434-951-7222
Facsimile:   434-951-7242

GREGORY S. DUNCAN, ESQ.
412 East Jefferson Street
Charlottesville, VA  22902
Telephone:  434-979-8556
Facsimile:   434-979-9766

19

G. OLIVER KOPPELL & ASSOCIATES
G. Oliver Koppell
John F. Duane
Daniel Schreck
99 Park Avenue, 3rd Floor
New York, NY 10016
Telephone: 917-368-0400
Facsimile: 212-973-9494

WHALEN & TUSA, P.C.
Joseph S. Tusa
Paul C. Whalen
33 West 19th Street, 4th Floor
New York, NY 10011
Telephone: 212-400-7100
Facsimile: 212-658-9685

C. ALLISON POWELL, P.C.
C. Allison Powel
2625 Highland Avenue, SSuite 705
Birmingham, AL 35205
Telephone: 205-930-4576
Facsimile: 503-905-1493

*Attorneys for Plaintiffs and Class Counsel
for the Certified Zimmerman Action Classes*